John R. Lund, Utah Bar No. 04368
JLund@parsonsbehle.com
Lara A. Swensen, Utah Bar No. 08493
LSwensen@parsonsbehle.com
PARSONS BEHLE & LATIMER
201 South Main Street, Suite 1800
Salt Lake City, UT 84111
Telephone:  801.532.1234
Facsimile:  801.536.6111
ecf@parsonsbehle.com

Jeremy A. Fielding *(pro hac vice forthcoming)*
jfielding@lynnllp.com
LYNN PINKER COX & HURST, LLP
2100 Ross Avenue, Suite 2700
Dallas, TX 75201
Telephone: 214.981.3800
Facsimile: 214.981.3839

*Attorneys for Plaintiff TRAVELPASS GROUP, LLC*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **TRAVELPASS GROUP, LLC,** | **COMPLAINT** |
| *Plaintiff,* | Case No.: 2:17-cv-00247 |
| **vs.** | Judge Jill N. Parrish |
| **BENJAMIN & BROTHERS, LLC d/b/a RESERVATIONS.COM, and RESERVATIONS TECHNOLOGIES, INC.,** | **JURY DEMANDED** |
| *Defendants.* | |

Plaintiff TravelPass Group, LLC ("TravelPass") by and on behalf of its wholly owned

subsidiary Reservation Counter, LLC ("Reservation Counter" and, together with TravelPass,

"Plaintiff") brings this Complaint against Defendants Benjamin & Brothers, LLC d/b/a

Reservations.com and Reservations Technologies, Inc. (collectively, "Res.com" or "Defendants") and in support thereof alleges as follows:

## PRELIMINARY STATEMENT

1.      This is a case involving theft and betrayal.  With the help of Expedia employees, Res.com stole Plaintiff's business "playbook" – its data reflecting years of research and millions of dollars of investment.  Worse, when Expedia higher-ups discovered the theft and its employees' involvement in it, Expedia deliberately chose to cover it up.  Instead of informing Plaintiff of this serious data breach, Expedia (who Plaintiff believed was its trusted business partner) actively concealed it.  Secretly settling with Res.com, Expedia passively watched while Res.com used this stolen data to compete against Plaintiff, enrich themselves, and decimate Plaintiff's business.

2.      To redress the harm caused by Res.com's theft and use of Plaintiff's data – harm that Expedia's concealment efforts actively enabled – Plaintiff brings this suit.

## PARTIES

3.      Plaintiff TravelPass Group, LLC is a Utah limited liability company with its principal office located at 2961 West Maple Loop Drive, Suite 300, Lehi, Utah 84043.

4.      Defendant Benjamin & Brothers, LLC d/b/a Reservations.com, upon information and belief, is a Delaware limited liability company with its principal office located at 1111 Lincoln Road, Suite 750, Miami Beach, FL 33139.

5.      Defendant Reservations Technologies, Inc., upon information and belief, is a Delaware corporation with its principal office located at 1111 Lincoln Road, Suite 750, Miami Beach, FL 33139.

## JURISDICTION AND VENUE

4846-9738-5030 v1

6.     This Court has original jurisdiction of this civil action under 28 U.S.C. § 1332(a), because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.  Complete diversity exists, because Plaintiff is a citizen of Utah, where its principal place of business is located, Defendants Reservations.com and Reservations Technologies, Inc. are citizens of Florida, where their principal places of business are located.

7.     This Court also has original jurisdiction over this matter under, without limitation, 18 U.S.C § 1831 *et seq.* and 28 U.S.C. § 1331.  The Defend Trade Secrets Act, 18 U.S.C. § 1836, as amended, provides for federal question jurisdiction over civil actions based upon the misappropriation of trade secrets.  This Court has supplemental jurisdiction over the common law claims asserted herein under 28 U.S.C. § 1367(a).

8.     This Court has personal jurisdiction over Reservations.com, and Reservations Technologies, Inc., because each has engaged in minimum contacts with Utah and exercising jurisdiction over Reservations.com and Reservations Technologies, Inc. would not offend traditional notions of fair play and substantial justice.  The Court may exercise general personal jurisdiction over these Defendants because each Defendant is essentially at home in this jurisdiction due to their ongoing, systematic, and continuous business with persons in this State. Moreover, this Court has specific jurisdiction over Reservations.com and Reservations Technologies, Inc. because they acted in concert with one another to engage in a tort that caused injury to Plaintiff in the state of Utah.

9.     Venue is proper under 28 U.S.C. § 1391(b)(1), because Reservations.com and Reservations Technologies, Inc. are entities with capacity to sue and be sued in their common names under applicable law, and reside in this venue by virtue of this Court's personal jurisdiction.

3

10.     Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in Utah.  These events include the misappropriation of trade secret data developed and stored in Utah, and past and ongoing harm to Reservation Counter, a corporation formed and headquartered in Utah.

11.     Alternatively, to the extent venue is not proper under 28 U.S.C. §§ 1391(b)(1) or (2), then there is no district in which this action may otherwise be brought under Sections 1391(b)(1) and (2), and venue is, therefore, proper under 28 U.S.C. § 1391(b)(3), because Defendants are subject to this Court's general and specific personal jurisdiction for the reasons set forth above and below.

## FACTS

### A.      Reservation Counter Is an Online Travel Agency That Competes in the Keyword Search Market.

12.     Launched in 2007, Reservation Counter is an independent online travel agency ("OTA"), and sells hotel rooms from numerous hotel chains directly to consumers throughout the United States at the lowest available price in the keyword search advertising market.  Reservation Counter obtains the majority of its hotel room inventory from tier one OTAs such as Expedia.  Expedia, together with Priceline, owns the vast majority of OTAs.  For example, Expedia owns Hotels.com, Trivago, Orbitz, and Travelocity.

13.     Reservation Counter relies on competitive keyword advertising to draw consumers to its website and to offer those consumers a wide range of hotel rooms at the most competitive prices available.  Reservation Counter has invested tens of millions of dollars in technology capabilities, marketing expertise, and keyword search advertising campaigns to provide consumers with a broad array of choices for hotel rooms at affordable prices.

**B.**    **The Keyword Search Market.**

14.    Reservation Counter operates in the keyword search advertising market.  Search engines like Google, Yahoo and Bing auction keywords to advertisers.  Keywords are words that when typed by a user as part of a search query generate a search engine results page and also trigger advertisements at the top of results pages.  Advertisers bid on keywords that they would like to trigger their ads.  All other things being equal, higher bidding advertisers obtain better placement of their ads on a search engine's results page.

15.    Keyword advertising is a critical marketing and sales tool for Reservation Counter and other OTA's operating in the keyword search advertising market.  Reservation Counter bids on certain keywords to target consumers who are most likely to book a room.

16.    Search engines calculate the rank of each advertisement according to the maximum bid the advertiser submits for the ad and the quality scores of the ad.  Once a search engine calculates the winning bidder, that bidder will have its ad displayed on the search engine's results page for specific users whose search queries match the bidder's keywords.

17.    Auctions for keywords are sealed.  OTAs do not know what other OTAs are bidding when they submit their bids to search engines.  Thus, any data and information used to determine how, when, where, and in what amount to successfully bid is crucial to the business interests of an OTA, and to the commercial success of that OTA.

**C.**    **Reservation Counter Spends Millions Developing Its Trade Secret Data, and Renews an Affiliation Agreement With Expedia.**

18.    Reservation Counter employs a data science team to develop data sets, which include data such as hotel booking volume, hotel cancellation rates, locations of relevant hotels, types of hotels, hotel booking volume by time of year, and booking window by hotel (collectively

5

the "Trade Secret Data" or the "Data").  This Data constitutes Reservation Counter's "playbook," and analysis of this information is used to successfully bid against other OTAs in keyword auctions.  This Data is the key to Reservation Counter's success as a business, as it allows the company to efficiently advertise in key markets while strategically targeting only certain keyword terms in underutilized markets to achieve maximum profits.  Generating this type of Data is not cheap, however, and it presents a financial hurdle to any new OTA that often prohibits it from growing and becoming successful.  From 2011 through early 2014, Reservation Counter spent approximately $30,000,000 on the creation and development of the Data.

19. Yatin Patel, the founder of Res.com, knows the difficulties of developing this type of Data firsthand, as he owned and operated various other failed OTAs over the past five years, including Orlando.com, HotelSavings.com, and Roomstays.com.  Despite the fact that these websites were managed by the same individuals as Res.com, each failed to become competitive in the keyword search market because they did not have the necessary Data.

20. On April 1, 2013, Reservation Counter, through its parent entity Partner Fusion, Inc., renewed its Affiliation Agreement (the "Agreement") with EAN.com, LP ("EAN"), a wholly owned subsidiary of Expedia.  The Agreement, which was originally entered into in 2009, allows Reservation Counter to provide Expedia with marketing services in relation to hotel bookings made on ReservationCounter.com in return for access to Expedia's hotel database.  Expedia also receives a commission from each sale made through Reservation Counter's website.  The Agreement requires both Expedia and Reservation Counter to keep confidential the other party's confidential information (defined under the Agreement), and not to disclose such information to any other party.  Specifically, Section 10 of the Agreement states in relevant part:

> [T]he Parties agree to keep confidential the other party's Confidential Information, and that the Confidential Information will not, without the other Party's consent, be disclosed in any manner whatsoever, in whole or in part, and shall not be used other than as contemplated by this agreement. Further, each Party will share the Confidential Information with only those persons within its company (and its advisors) who need to know the Confidential Information for the purpose of assisting in the performance of the Agreement and who are informed of and agree to be bound by the terms hereof as if a party to this Agreement.

21.  In accordance with the Agreement, Expedia retained copies of Reservation Counter's Trade Secret Data as "Confidential Information," and was under a contractual obligation to protect that Data from unauthorized disclosure to third parties.

**D.  Expedia Leaks Reservation Counter's Trade Secret Data to Reservations.com, a Direct Competitor, in Breach of the Agreement.**

22.  Res.com is an OTA and a direct competitor of Reservation Counter.  Like Reservation Counter, Res.com partners with Expedia, and Expedia receives a percentage of every booking made through Res.com's website.  Like any other OTA, Res.com relies on competitive keyword advertising to draw consumers to its website and generate revenue.  It proudly displays on its website that the first reservation made through its website occurred in April of 2014.

23.  Reservations Technologies, Inc. is a corporation founded by Sunil Bhatt in June 2015.  The officers and directors of the company include Messrs. Bhatt, Patel, and Mahesh Chaddah.

24.  Before co-founding Reservations.com in early 2014, Mr. Bhatt was the Vice President and General Manager of EAN from 2009 until June 2011.  During this period, Reservation Counter signed the original Affiliation Agreement between itself and EAN.

25.  In early 2014, as Res.com prepared to open its doors, an Expedia employee named Brian Hungria began leaking Reservation Counter's Trade Secret Data to employees at a

competitor of Reservation Counter, Roomstays.com.  These employees included Skip Gibson, Yatin Patel, and Sherman Distin.  Upon information and belief, Mr. Patel took the Trade Secret Data with him when he started Res.com.  Mr. Patel is the founder of Res.com and Mr. Distin was a member of Res.com's search engine marking ("SEM") group.

26.     A March 25, 2014 e-mail recently obtained by Reservation Counter shows Mr. Hungria e-mailing Messrs. Gibson, Patel, and Distin Dropbox files – **shockingly titled "Competitor Data"** – containing Reservation Counter's Trade Secret Data:

From: bhungria@hotels.com
To: skipgibsonjr@gmail.com; patelyatin@hotmail.com
CC: distin.sherman@gmail.com
Subject: Files You Requested
Date: Tue, 25 Mar 2014 18:55:18 +0000

Skip,

Per our phone discussion below are the files you requested.  Skip, keep in mind that last year they were pushing offline to our call center compared to this year.  I know you raised this question when reviewing a previous report I provided you. Hope this helps amigos!

https://www.dropbox.com/s/ziq7u16xrq4jzxh/Competitor%20Data%20April%20BH.xlsx

https://www.dropbox.com/s/h4wcn3nibacgfhm/Competitor%20Data%20June%20BH.xlsx

https://www.dropbox.com/s/nql5jjd30xv9j0b/Competitor%20Data%20May%20BH.xlsx

27.     With access to Reservation Counter's stolen Data at the company's outset, Res.com not only held the key to Reservation Counter's success, but also was spared the years and millions of dollars necessary to develop its own data analytics and successful keyword bid strategy.

28.     While at Expedia, Mr. Hungria sent a total of 18 months of Reservation Counter's Data to Messrs. Patel and Gibson, and may have sent the same Data to other of Reservation Counter's OTA competitors.  Further, upon information and belief, Mr. Hungria and other Expedia employees may have sent proprietary trade secret information belonging to other Expedia affiliates

to various competitors in the keyword search market without the knowledge or permission of those affiliates.

29.     Res.com – upon information and belief – used that Trade Secret Data to implement a bid strategy identical to Reservation Counter's and immediately compete in key markets that Reservation Counter's data revealed.  By using the stolen Data to build a successful foundation on which to grow their business, Res.com bypassed the millions of dollars in investments necessary to procure, process and cultivate the data essential to developing a bid strategy.  It also enabled Res.com to reach nearly 1 million bookings within a year of opening for business – a benchmark it took Reservation Counter six years and tens of millions of dollars to reach.

**E.     Misappropriation of Reservation Counter's Trade Secret Data Caused Immediate and Ongoing Injury.**

30.     The misappropriation of Reservation Counter's Trade Secret Data had an immediate and detrimental effect on Reservation Counter's business.  Before the theft in early 2014, Reservation Counter was recognizing well over 100% growth in bookings from month-to-month.  After the misappropriation of its Trade Secret Data, Reservation Counter saw its growth drop precipitously, falling to just 6% in June of 2014, and dropping below zero for each month from July 2014 to present.  *See* Table 1.



Table 1, *Reservation Counter Year-Over-Year Growth*

31.     As Res.com began using the Trade Secret Data to inform its bidding process in early 2014, it emerged as Reservation Counter's most significant competitor within months. Res.com was able to do so, upon information and belief, by entering each of the markets identified in the Trade Secret Data.

32.     As a result, Reservation Counter saw an immediate increase in its marketing expense, otherwise known as "Cost-Per-Click," or "CPC."  This CPC increase was targeted at each of the individual hotels identified in the Data, and increased almost immediately after the stolen Data was transferred to Res.com. *See* Table 2; Table 3.



Table 2, *Reservation Counter CPC Percentage Increase for Google, Including Only Hotels Identified in Stolen Data*



Table 3, *Reservation Counter CPC Percentage Increase for Bing, Including Only Hotels Identified in Stolen Data*

33.     As Reservation Counter's business declined at an alarming rate, the company was simultaneously forced to increase advertising and pay higher costs for those ads, as advertising costs rose due to increased competition from Res.com.   From 2014 to 2015, as Reservation Counter's growth drastically decreased (as illustrated in Table 1), the company's CPC jumped nearly 140% between both Google and Bing. *See* Table 4.  These costs further multiplied the harm inflicted by the leak of the Trade Secret Data to Res.com.



Table 4, *Reservation Counter Total CPC Percentage Increase for Google and Bing Combined*

34.    Because the stolen Trade Secret Data covered 18 months of data developed by Reservation Counter, Res.com's use of this high volume of data continues to negatively impact Reservation Counter's business.  For example, in a January 2016 email, Reservation Counter's CEO, Dan Nelson, remarked that an EAN employee had informed him that Reservation Counter had been losing many of its most profitable properties to Res.com.  Mr. Nelson also notes that Reservation Counter's conversion rate (number of bookings divided by total number of website visitors) had inexplicably fallen by more than a third.  Indeed, this was precisely what Res.com

13

wanted, as it used Reservation Counter's hotel-specific Data to inform its bidding strategy and steal Reservation Counter's business.

---------- Forwarded message ----------
From: **Daniel A. Nelson** <dnelson@partnerfusion.com>
Date: 26 January 2016 at 16:38
Subject: Eaton Chelsea
To: Steve Dalley <sdalley@partnerfusion.com>
Cc: Mike Hurren <mhurren@partnerfusion.com>, Ryan McCoy <rmccoy@partnerfusion.com>

Steve -

As you know, the Eaton Chelsea (former Delta Chelsea) in Toronto has been one of our top selling properties historically.  Matt Duckworth mentioned that Reservations.com seems to have taken our place on this and other big selling independent properties.

████████████████████████████████████████████████████████████████

Can you and your team look at this and cross-compare to other competitive sites to try to figure out why we are converting 1/3 our normal rate?  If we can figure this out, Mike can focus on a winning bid strategy.

Thanks
Dan

--
Daniel A. Nelsons

      35.     In total, the misappropriation of the Trade Secret Data has cost Reservation Counter more than $61,000,000 in lost profits alone.

      36.     Reservation Counter was also forced to shift its development dollars and business focus to on-boarding new supply at higher payout terms in an attempt to restore profits.  Reservation Counter incurred losses in call centers because it lost the ability to accurately forecast demand, and the demand that Reservation Counter did retain has generated far worse returns than before the misappropriation.  Furthermore, this financial shift and loss of earnings delayed TravelPass's anticipated 2015 launch of NiteCrawler, a portfolio company that has still not been launched.  As a self-funded company and the parent of Reservation Counter, the misappropriation of Reservation Counter's Trade Secret Data also meant that TravelPass lost the capital necessary to focus on anything other than reestablishing lost profit metrics in the keyword search market.

37.     Reservations.com's misappropriation of the Trade Secret Data also inhibited TravelPass's ability to raise capital.  In 2014, TravelPass had nearly a dozen private equity firms and strategic groups with high interest in either purchasing or investing in Reservation Counter, including Expedia itself.  In May of 2014, TravelPass engaged in several high-level meetings with Expedia, including with Expedia's CEO Dara Khosrowshahi and Senior Vice President of Development Eric Hart.  These meetings were arranged due to Expedia's expressed interest in investing in or acquiring Partner Fusion.  As Res.com continued to misappropriate and utilize the Trade Secret Data, these potential investors lost interest due to Reservation Counter's disappearing earnings, which dramatically reduced its funding options.

38.     Since the misappropriation of its Data began in early 2014, Reservation Counter has lost most of its business and almost 90% of its value as a company.

**F.     Expedia Covers Up the Theft of Reservation Counter's Data**

39.     Expedia learned about its employees' participation in the breach and theft of Plaintiff's Data soon after the initial breach occurred.  However, instead of informing Plaintiff – its long-time business partner – about the theft so that Plaintiff could take legal steps to prevent Res.com from further using the Data to harm Plaintiff, Expedia instead chose to actively conceal the breach.  Expedia signed a secret settlement agreement with Res.com and its principals, then Expedia watched silently as Res.com used this stolen Data to compete against Plaintiff and decimate Plaintiff's business.

40.     In fact, Expedia had compelling evidence that Res.com was using the misappropriated Data to harm Reservation Counter.  In an email sent to Expedia in May 2014 – shortly after the theft had occurred and Res.com had begun to use the stolen Data – Reservation

Counter's CEO, Dan Nelson, specifically noted Res.com's "disturbing" presence in certain keyword auctions that ordinarily would be unknown to startup OTAs like Res.com.  Indicating that it "feels and looks like they are getting a ton of support from [Expedia] only to compete with us," Mr. Nelson presciently complained that it "feels like competitive intel is passing to this start-up."

> From: "dnelson_partnerfusion. com" <dnelson@partnerfusion.com <mailto: dnelson@partnerfusion.com>>
> Date: Friday, May 23, 2014 at 10:32 AM
> To: Administrator <waird@expedia.com <mailto: waird@expedia.com>>, Chad Montgomery <cmontgomery@hotels.com <mailto: cmontgomery@hotels.com>>
> Subject: Hilton
>
> Wendy / Chad,
>
> As suspected, the auction has back-filled with Expedia, Orbitz, and disturbingly, Reservations.com<http://Reservations.com> - in addition to a bunch of template players who would never have a prayer in the auction.
>
> Unless I hear otherwise, we plan to go live EOD today.  We want to understand Reservations.com<http://Reservations.com>.  It feels and looks like they are getting a ton of support from EAN only to compete with us - including a straight copy of our ad text and url structures.  Sure feels like competitive intel is passing to this start-up.  Why didn't they go down on Hilton?  Playing field not level.
>
> Dan
>
> Daniel A. Nelson
> CEO
> Partner Fusion, Inc.

41.     Nevertheless, despite knowing that Reservation Counter's competitive Data ***had*** passed to "this start up" **<u>and</u>** was being used to unfairly compete, Expedia inexplicably maintained its silence.  Expedia's decision not to inform Reservation Counter of the contractual breach, or to take any affirmative actions to retract the data from Res.com allowed the illegal use to continue for almost two more years.

42.     Due to these and other actions taken by Expedia, Reservation Counter is currently pursuing a parallel action against Expedia in arbitration.

**G.    <u>Reservation Counter Was Made Aware of the Theft of Its Trade Secrets and Breach of the Agreement by a Whistleblower.</u>**

43.     Reservation Counter was not informed of the theft of its Trade Secret Data until 2016, when a former Expedia employee informed Reservation Counter that its Data had been

stolen and given to Res.com.  This source confirmed that both the legal department and the highest executives at Expedia had been made aware of the misappropriation of Reservation Counter's Data almost immediately after it had begun – in April of 2014 – and that Expedia had made an internal decision not to inform Reservation Counter of either the misappropriation or of the breach of Section 10 of the Agreement.  Moreover, this source revealed that Expedia actively sought to conceal the theft from Reservation Counter, including by threatening employees that disclosure of the Data theft would be a breach of the employees' non-disclosure agreements.

44.     By making the decision not to tell Reservation Counter and to deny knowledge of the issue when Mr. Nelson directly asked in his May 2014 email, Expedia was able to avoid what would have been a public relations nightmare while simultaneously profiting from the illegitimate success of Res.com.  Expedia also prevented Reservation Counter from obtaining legal or equitable relief that might have prevented continuing harm.

45.     As a result of the foregoing breaches and unlawful activity, Reservation Counter has been injured.  TravelPass, on behalf of Reservation Counter, brings this suit to recover the damages, fees, costs, and/or expenses to which it is entitled.

### COUNT ONE – TRADE SECRET MISAPPROPRIATION
#### (Defend Trade Secrets Act, 18 U.S.C. §§ 1836-1839)

46.     Plaintiff re-alleges and incorporates by reference all of the foregoing allegations.

47.     Defendants have misappropriated Reservation Counter's confidential information including trade secrets related to products used and intended for use in interstate commerce in violation of 18 U.S.C. §§ 1836-39 (hereinafter "the Defend Trade Secrets Act" or "DTSA").  Reservation Counter's confidential business information, including without limitation Reservation

Counter's Trade Secret Data, is entitled to protection as trade secrets under federal law. As set forth above, Reservation Counter is the owner of Reservation Counter's Trade Secret Data.

48.     Reservation Counter's Trade Secret Data includes financial, business, scientific, technical, economic, and/or engineering information, including plans, compilations, formulas, designs, methods, techniques, processes, procedures, programs, or codes, both tangible and intangible, which enable Reservation Counter to efficiently bid on key search terms and target underutilized markets.

49.     As set forth above, Reservation Counter has taken reasonable measures to keep Reservation Counter's Trade Secret Data secret, including, for example, entering into confidentiality agreements, implementing physical access restrictions, and implementing computer network restrictions.

50.     Reservation Counter's Trade Secret Data derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information. Reservation Counter's Trade Secret Data has actual and/or potential independent value because, for example, this information is not generally known to Reservation Counter's competitors and other persons in the relationship marketing industry who could obtain economic value form its use or disclosure. This information is not readily ascertainable to such persons by proper means.

51.     Defendants have misappropriated Reservation Counter's trade secrets by acquiring Reservation Counter's Trade Secret Data while knowing or having reason to know that such information was acquired by improper means. Such acquisition by improper means includes, on

information and belief, acquiring, utilizing, and retaining, without authorization, copies of Reservation Counter's Trade Secret Data from Expedia, who is contractually obligated to keep Reservation Counter's confidential information secret, constituting theft.

52.     Further, as set forth above, Defendants knew or had reason to know at the time of their unauthorized acquisition and use of Reservation Counter's Trade Secret Data that the knowledge of the trade secret was acquired under circumstances giving rise to a duty to maintain its secrecy or limit the use of such information. Defendants also knew or had reason to know at the time of its unauthorized acquisition and use of Reservation Counter's Trade Secret Data that such information was derived from or through a person or entity, such as Expedia, who owed a duty to Reservation Counter to maintain the secrecy of Reservation Counter's Trade Secret Data or limit the use of such information.

53.     Defendants' actions are willful and malicious.  Employees at Res.com willfully coordinated with an Expedia employee to misappropriate Reservation Counter's Trade Secret Data and maliciously used that information to harm Reservation Counter's business while unjustly Res.com.

54.     Reservation Counter is entitled to preliminary and permanent injunctive relief under the DTSA, enjoining Defendants' actual misappropriation of Reservation Counter's trade secrets. Reservation Counter seeks injunctive relief, including:  (1) compelling Res.com to return to Reservation Counter any and all Reservation Counter Trade Secret Data that is in Res.com's possession, custody, or control; (2) compelling Res.com to then securely delete any and all copies of Reservation Counter's Trade Secret Data remaining in Res.com's possession, custody, or control in a pre-approved, forensically-sound manner, and permitting Reservation Counter to

4846-9738-5030 v1

confirm that all such information has been securely deleted; (3) preventing Res.com from using any data contained in the Trade Secret Data as the basis for any bid in any keyword auction; and (4) preventing Res.com from disclosing or using any Trade Secret Data learned by Res.com for any purpose.

55.     Under the DTSA, Reservation Counter is entitled to and seeks treble damages for actual loss caused by Defendants' misappropriation.  Reservation Counter is also entitled to and seeks damages for Res.com's unjust enrichment caused by the misappropriation. Further, Reservation Counter is entitled to and seeks exemplary damages for Defendants' willful and malicious misappropriation of Reservation Counter's trade secrets.

56.     Reservation Counter is also entitled to recover and seeks its reasonable attorneys' fees due to Defendants' willful and malicious misappropriation of Reservation Counter's trade secrets.

## COUNT TWO - VIOLATION OF THE UTAH UNIFORM TRADE SECRETS ACT
### (Utah Uniform Trade Secrets Act, Utah Code Ann. §§ 13-24-1, et seq.)

57.     Plaintiff re-alleges and incorporates by reference all of the foregoing allegations.

58.     Defendants have misappropriated Reservation Counter's confidential trade secrets in violation of the Utah Uniform Trade Secrets Act, Utah Code Ann. § 13-24-1, *et seq.* (hereinafter "the Utah Uniform Trade Secrets Act" or "UUTSA"). Reservation Counter's confidential business information currently in Defendants' possession, custody or control, including without limitation Reservation Counter's Trade Secret Data, is entitled to protection as trade secrets under UUTSA. As set forth above, Reservation Counter is the owner of Reservation Counter's Trade Secret Data.

4846-9738-5030 v1

59. Reservation Counter's Trade Secret Data includes formula, patterns, compilations, programs, devices, methods, techniques, and/or processes that enable Reservation Counter to efficiently bid on key search terms and target underutilized markets.

60. Reservation Counter's Trade Secret Data derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use. Reservation Counter's Trade Secret Data has actual and/or potential independent value because, for example, this information is not generally known to Reservation Counter's competitors and other persons in the relationship marketing industry who could obtain economic value from its use or disclosure. This information is not readily ascertainable to such persons by proper means.

61. As set forth above, Reservation Counter's Trade Secret Data is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. Such efforts include, for example, entering into confidentiality agreements, implementing physical access restrictions, and implementing computer network restrictions.

62. Defendants have misappropriated Reservation Counter's trade secrets by acquiring Reservation Counter's Trade Secret Data while knowing or having reason to know that such information was acquired by improper means. Such acquisition by improper means includes, on information and belief, acquiring, utilizing, and retaining, without authorization, copies of Reservation Counter's Trade Secret Data from Expedia, who is contractually obligated to keep Reservation Counter's confidential information secret, constituting theft.

63.     Defendants have misappropriated Reservation Counter's trade secrets, without Reservation Counter's express or implied consent through, on information and belief, their relationship with Expedia.

64.     Further, as set forth above, Defendants knew or had reason to know at the time of their unauthorized acquisition and use of Reservation Counter's Trade Secret Data that the knowledge of the trade secret was acquired under circumstances giving rise to a duty to maintain its secrecy or limit the use of such information. Defendants also knew or had reason to know at the time of their unauthorized acquisition and use of Reservation Counter's Trade Secret Data that such information was derived from or through a person or entity, such as Expedia, who owed a duty to Reservation Counter to maintain the secrecy of Reservation Counter's Trade Secret Data or limit the use of such information.

65.     Defendants' actions are willful and malicious.  Defendants willfully coordinated with an Expedia employee to misappropriate Reservation Counter's Trade Secret Data and maliciously use that information to harm Reservation Counter's business while unjustly enriching Res.com.

66.     Reservation Counter is entitled to preliminary and permanent injunctive relief under the UUTSA, enjoining Defendants' actual or threatened misappropriation of Reservation Counter's trade secrets.  Reservation Counter seeks injunctive relief, including:  (1) compelling Res.com to return to Reservation Counter any and all Reservation Counter Trade Secret Data that is in Res.com's possession, custody, or control; (2) compelling Res.com to then securely delete any and all copies of Reservation Counter's Trade Secret Data remaining in Res.com's possession, custody, or control in a pre-approved, forensically-sound manner, and permitting Reservation

Counter to confirm that all such information has been securely deleted; (3) preventing Res.com from using any data contained in the Trade Secret Data as the basis for any bid in any keyword auction; and (4) preventing Res.com from disclosing or using any Trade Secret Data learned by Res.com for any purpose.

67.     Under the UUTSA, Reservation Counter is entitled to and seeks damages for actual loss caused by Defendants' misappropriation. Reservation Counter is also entitled to and seeks damages for Res.com's unjust enrichment caused by the misappropriation. Further, Reservation Counter is entitled to and seeks exemplary damages for Defendants' willful and malicious misappropriation of Reservation Counter's trade secrets.

68.     Reservation Counter is also entitled to recover and seeks its reasonable attorneys' fees due to Defendants' willful and malicious misappropriation of Reservation Counter's trade secrets.

**JURY DEMAND**

69.     Plaintiff requests a trial by jury on all claims and issues so triable by right.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants for the following:

(1)     An award of damages as requested in each Count above;

(2)     Injunctive relief prohibiting Defendants from any further use or disclosure of Plaintiff's Trade Secret Data;

(3)     An award of all costs of this action, including attorneys' fees and interest; and

(4)     Such other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

23

DATED: March 31, 2017

/s/ Lara A. Swensen
John R. Lund
Lara A. Swensen
PARSONS BEHLE & LATIMER

Jeremy A. Fielding *(pro hac vice forthcoming)*
Christopher J. Schwegmann *(pro hac vice forthcoming)*
Jonathan D. Kelley *(pro hac vice forthcoming)*
LYNN PINKER COX & HURST, LLP

*Attorneys for Plaintiff TRAVELPASS GROUP, LLC*