UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| TRAVELPASS GROUP, LLC,<br><br>　　　　　　　　Plaintiff,<br>v.<br><br>BENJAMIN & BROTHERS, LLC dba RESERVATIONS.COM and RESERVATIONS TECHNOLOGIES, INC.,<br><br>　　　　　　　　Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION TO STAY**<br><br>Case No. 2:17-cv-00247-JNP-PMW<br><br>District Judge Jill N. Parrish<br>Chief Magistrate Judge Paul M. Warner |

Judge Jill N. Parrish referred this matter to Chief Magistrate Judge Paul M. Warner pursuant to 28 U.S.C. § 636(b)(1)(A).[1] Pursuant to the court's inherent authority, Defendants Benjamin & Brothers, LLC dba Reservations.com and Reservations Technologies, Inc. (collectively, "Res.com") have motioned for an order staying this litigation pending the outcome of arbitration between Plaintiff TravelPass Group, LLC ("TravelPass") and non-party Expedia, Inc. ("Expedia").[2] Having reviewed the parties' briefs and the relevant law, the court renders the following Memorandum Decision and Order.[3]

## BACKGROUND

According to TravelPass's complaint, TravelPass owns an online travel agency called Reservation Counter, LLC ("Reservation Counter").[4] Reservation Counter "sells hotel rooms from numerous hotel chains directly to consumers throughout the United States at the lowest

---

[1] Dkt. No. 5.
[2] Dkt. No. 25.
[3] Pursuant to DUCivR 7-1(f), the court elects to determine the present motion on the basis of the written memorandum and finds that oral argument would not be helpful or necessary.
[4] Dkt. No. 2 at ¶ 12.

1

available price in the keyword search advertising market."[5] Reservation Counter obtains the majority of its hotel room inventory from other online travel agencies like Expedia and Priceline.[6] Like TravelPass, Res.com is in the business of online travel and directly competes with Reservation Counter.[7]

In 2009, Reservation Counter entered into an Affiliation Agreement with EAN.com, LP which is a wholly owned subsidiary of Expedia.[8] Pursuant to the Affiliation Agreement, Reservation Counter provides Expedia with marketing services for hotel bookings made on Reservationcounter.com and, in return, Reservation Counter receives access to Expedia's hotel database.[9] Additionally, the Affiliation Agreement provides Expedia a commission for each sale made through Reservationcounter.com.[10]

The Affiliate Agreement includes a clause prohibiting the unauthorized use or disclosure of either party's trade secret information.[11] Furthermore, the Affiliation Agreement contains an arbitration clause requiring any dispute or claim arising out of the Affiliation Agreement to be submitted to arbitration in Seattle, Washington.[12]

In early 2014, TravelPass alleges that one of Expedia's employees, Brian Hungria, began leaking Reservation Counter's trade secret data to employees at another competitor Roomstays.com.[13] TravelPass further alleges that one of Roomstays.com's employees, Yatin

---

[5] *Id.*
[6] *Id.*
[7] *Id.* at ¶ 22.
[8] *Id.* at ¶ 20. On April 1, 2013 Reservation Counter, through its parent entity Partner Fusion, Inc., renewed its Affiliation Agreement with EAN.com, LP. *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.* (citing Section 10 of the Affiliate Agreement).
[12] Dkt. No. 25 at Ex. 1, ¶ 4.
[13] Dkt. No. 2 at ¶ 25.

2

Patel, left Roomstays.com with Reservation Counter's trade secret data and started Res.com.[14] In other words, TravelPass alleges that Expedia aided and abetted Res.com's misappropriation of TravelPass's trade secrets.

In March 2017, TravelPass filed two nearly identical lawsuits in the District of Utah—one against Expedia[15] and the other against Res.com.[16] Relying on the Affiliate Agreement, on April 17, 2017, Expedia and Res.com jointly sent a Demand for Arbitration letter to American Arbitration Association ("AAA").[17] TravelPass objects to Res.com's participation in the TravelPass-Expedia arbitration and whether Res.com will be allowed to participate in arbitration is unsettled.[18] On April 20, 2017, pursuant to the stipulation of the parties, TravelPass's lawsuit against Expedia was stayed pending the result of arbitration in Seattle, Washington.[19]

## DISCUSSION

Res.com's motion asks the court to exercise its inherent authority to stay the case pending the resolution of the TravelPass-Expedia arbitration.[20] Res.com argues that the TravelPass-Expedia arbitration "raises common and identical questions of law and fact" to the present litigation and, therefore, the court should stay this case to avoid inconsistent and duplicitous results.[21] In response, TravelPass argues that a stay is unwarranted because TravelPass's claims against Res.com are "legally and factually distinct."[22] Furthermore, TravelPass claims a stay

---

[14] *Id.*
[15] *TravelPass Grp., LLC v. Expedia, Inc.*, 2:17-cv-00246-TS, Dkt. No. 2.
[16] Dkt. No. 2.
[17] Dkt. No. 25 at Ex. 1, ¶ 3.
[18] *Id.* at 6.
[19] *TravelPass Grp., LLC v. Expedia, Inc.*, 2:17-cv-00246-TS, Dkt. No. 26.
[20] Dkt. No. 25. In the alternative, Res.com argues that a stay should be granted pursuant to § 3 of the Federal Arbitration Act. *Id.* at 14–15. As discussed below, because the court elects to stay the present litigation pursuant to the court's inherent authority, the court need not determine whether a stay is mandatory under the Federal Arbitration Act.
[21] *Id.* at 9.
[22] Dkt. No. 28 at 4.

would unduly prejudice TravelPass because: (1) TravelPass cannot enjoin Res.com from misappropriating TravelPass's trade secrets in arbitration and (2) arbitration would inherently limit TravelPass's discovery.[23]

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigant." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). When deciding to exercise its inherent power to stay, the court considers: "(1) whether the stay would promote judicial economy; (2) whether the stay would avoid possible inconsistent results; and (3) whether the stay would not work undue hardship or prejudice against the plaintiff." *United States ex rel. Cache Valley Elec. Co. v. Travelers Cas. & Sur. Co. of Am.*, No. 2:13-cv-01120-DN, 2015 WL 164064, at *3 (D. Utah Jan. 13, 2015) (citation omitted). Furthermore, a motion to stay is appropriate where there is a closely related arbitration that has the potential to resolve the disputes before the court, even if the moving party is a nonsignatory to the arbitration agreement and is not a party in the pending arbitration. *Id.* at *2 ("Even though [the defendants] are not parties to the [arbitration] and are not technically bound by the . . . arbitration clause, staying this case is appropriate while the arbitration determines important issues."); *Sparks v. Saxon Invs., LLC*, No. 2:09-cv-151-DAK, 2009 WL 2886029, at *5 (D. Utah Sept. 3, 2009); *Evergreen Holdings, Inc. v. Sequoia Glob., Inc.*, No. CIV-08-776-F, 2008 WL 4723008, at *3 (W.D. Okla. Oct. 23, 2008).

For example, in *Sparks v. Saxon Investments*, the plaintiffs enlisted the help of a bank for investment advice. 2009 WL 2886029, at *1. The plaintiffs claimed that the bank's representative encouraged them to invest in a company and that the investment eventually resulted in a complete loss. *Id.* The plaintiffs signed a client agreement with the bank that

---
[23] *Id.* at 8–9.

required any dispute between the parties to be resolved in arbitration. *Id.* In addition to suing the bank, the plaintiffs sued the bank's parent company which was a nonsignatory to the client agreement. *Id.* at 2. The parent company argued that a stay pending the completion of arbitration was necessary to prevent "the possibility of inconsistent rulings and burdensome and duplicative discovery." *Id.* at *5. The court agreed. Applying the three factors noted above, the court held that a stay was necessary to promote judicial economy because resolution of the plaintiffs' claims against the bank may "resolve all or a significant portion" of the plaintiffs' claims against the parent company. *Id.* The court found that a stay would also prevent the potential for inconsistent rulings and expensive and duplicative discovery. *Id.* Moreover, the court held that the plaintiffs would not suffer any prejudice by staying litigation pending the outcome of arbitration. *Id.*

Like *Sparks*, the TravelPass-Expedia arbitration will likely resolve all or a significant portion of TravelPass's claims against Res.com. The court is not persuaded that the TravelPass-Expedia arbitration and this lawsuit are so dissimilar to warrant concurrent litigation paths. TravelPass contends that "[t]he possibility that the data was stolen via Expedia is incidental, not essential to TravelPass's claims."[24] Therefore, TravelPass remarkably argues that this litigation can proceed without exploring Expedia's involvement. TravelPass's argument is inconsistent with the allegations in the complaint and glosses over the issues raised in the TravelPass-Expedia arbitration. To resolve the TravelPass-Expedia dispute, the arbiter will arguably need to assess: (1) whether the information allegedly misappropriated by Expedia constitutes trade secrets; (2) whether Expedia misappropriated TravelPass's trade secrets; (3) whether Res.com used TravelPass's trade secrets; and (4) whether Res.com's use of TravelPass's trade secrets caused

---

[24] *Id.* at 5.

TravelPass damages.[25]  In other words, many of the issues presented in this case will potentially be resolved by the TravelPass-Expedia arbitration.  If the arbiter finds that Expedia's employee misappropriated TravelPass's trade secrets and that TravelPass's trade secrets were ultimately used by Res.com, TravelPass may return to this court and seek relief on a much narrower legal and factual landscape.  Therefore, the interests of judicial economy and the need to avoid inconsistent results weigh in favor of staying this litigation.

      Moreover, the court is not persuaded by TravelPass's contention that a stay would cause it undue prejudice because TravelPass cannot seek immediate injunctive relief against Res.com in arbitration.  This case has been pending for three months and TravelPass has not attempted to seek preliminary injunctive relief against Res.com.  If ongoing misappropriation of TravelPass's trade secrets was of imminent concern, TravelPass would have immediately sought injunctive relief.  The court recognizes that TravelPass may suffer some financial hardship during this stay.  Importantly, however, TravelPass is not left without recourse.  TravelPass may vigorously seek relief from Expedia in arbitration and, later, if necessary, TravelPass may return to this court for a resolution of any remaining matters against Res.com.  Remedies such as monetary damages and prejudgment interest will compensate TravelPass for any damage it may suffer by implementing a stay.

---

[25] *TravelPass Grp., LLC v. Expedia, Inc.*, 2:17-cv-00246-TS, Dkt. No. 2 at ¶¶ 54–57, 64–66.

## CONCLUSION

Based on the foregoing, Res.com's Motion to Stay is **GRANTED**.[26] The court orders this case stayed pending the resolution of the arbitration proceedings between TravelPass and Expedia in Seattle, Washington.

**IT IS SO ORDERED.**

DATED this 3rd day of July, 2017.

BY THE COURT:

_____
Paul M. Warner
Chief United States Magistrate Judge

---

[26] Dkt. No. 25.